# IN THE COURT OF APPEALS OF IOWA

No. 20-0094
Filed January 21, 2021

**D'ANTHONY CURD,**
Applicant-Appellant,

**VS.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

D'Anthony Curd appeals from the dismissal of his application for postconviction relief. **AFFIRMED.**

Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**BOWER, Chief Judge.**

D'Anthony Curd appeals the dismissal of his application for postconviction relief (PCR).  Because the application is time barred, we affirm.

"We typically review [PCR] proceedings on error.  However, when the applicant asserts claims of a constitutional nature, our review is de novo.  Thus, we review claims of ineffective assistance of counsel de novo." *Ledzema v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (citations omitted).

On May 19, 2013, surveillance videos at a local convenience store showed Curd using Ronald Kunkle's debit card three times.

On June 10, police investigated reports of a foul odor and flies at an apartment in Cedar Rapids.  They found Kunkle's badly decomposed body on the bathroom floor, legs hanging in the tub, a towel over his head.  He had been stabbed at least thirty times in the head, neck, torso, and right thigh.

On July 1, police obtained personal items Curd had left behind after being in jail on May 24 and found Kunkle's blood on Curd's underwear.  Curd was interviewed by law enforcement at the apartment he shared with his girlfriend on August 19.  Curd initially denied using Kunkle's debit card until shown pictures of him and his girlfriend doing so.  Curd then blamed another person for Kunkle's death and said that other person gave him the bank card.  Curd's girlfriend was questioned later that day and eventually acknowledged she and Curd killed Kunkle.  She explained Curd and she took steak knives from their apartment and spent some time in Kunkle's apartment playing "beer pong."  She admitted she stabbed Kunkle "two or three times" in the neck and stated Curd "stabbed Ron a lot."  Then, they dragged the body to the bathroom, tried to bend him over the tub,

and covered his face with a towel. She turned on the vent fan, opened a window, and poured bleach around the apartment. Then they threw away their bloody clothes. They did not find money but did find Kunkle's card and identification. She confirmed they used Kunkle's card at the convenience store and stated Curd had tried to obtain loans or set up accounts using Kunkle's identity.

On September 3, a trial information was filed charging Curd with one count of first-degree murder. Attorneys Doug Davis and Todd Weimer were appointed to represent Curd.

On January 29, 2014, Curd's counsel filed a motion to determine the defendant's competency to stand trial and participate in his own defense. Curd was ordered to undergo a competency evaluation, and the evaluation resulted in a finding he was competent to stand trial.

Curd and the State reached a plea agreement to resolve the criminal case. Pursuant to the plea agreement, the trial information was amended to charge Curd with one count of second-degree murder and one count of second-degree robbery. On October 17, Curd pleaded guilty to both counts. A presentence investigation report was completed. On December 12, at a sentencing hearing, Curd was adjudicated guilty of second-degree murder and sentenced to an indeterminate prison term not to exceed fifty years and was adjudicated guilty of second-degree robbery and sentenced to an indeterminate term not to exceed ten years. The court ordered these sentences to run consecutively "to effectuate the maximum punishment for the life lost, the violence of the crime, and the maximum opportunity for rehabilitation to be met."

Curd did not appeal his convictions or sentences.

On April 23, 2018—more than three years after his conviction was final—Curd filed a pro se PCR application. The State filed a motion to dismiss the application as time barred pursuant to Iowa Code section 822.3 (2018).[1] The court dismissed all claims other than one asserting an illegal sentence.

On January 23, 2019, Curd's counsel filed an amended PCR application contending the sentence imposed was unconstitutional because trial counsel were ineffective in failing to investigate Curd's mental-health history and present evidence to support the imposition of concurrent rather than consecutive sentences.

After a hearing, the district court denied the PCR application as time barred. In the alternative, the district court rejected Curd's ineffective-assistance-of-counsel claim on the merits.

On appeal, Curd argues the court erred in concluding his claim was time barred, maintaining his sentence is illegal. We are not persuaded.

> [A] challenge to an illegal sentence includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional. This conclusion does not mean that any constitutional claim converts a sentence to an illegal sentence. For example, claims under the Fourth, Fifth and Sixth Amendments ordinarily do not involve the inherent power of the court to impose a particular sentence. Nor does this rule allow litigants to reassert or raise for the first time constitutional challenges to their underlying conviction.

---

[1] Iowa Code section 822.3 provides, in part:
> All other applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

*State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009).

Curd asserts the sentencing court might have imposed concurrent sentences if counsel had further investigated his mental-health history and presented that evidence in mitigation. This is not a challenge to the court's authority to impose consecutive sentences or a claim that consecutive sentences were outside the statutory bounds. *See generally Goodwin v Iowa Dist. Ct.*, 936 N.W.2d 634, 644–45 (Iowa 2019).[2] Because it is not an illegal sentence, Curd's claim is subject to the three-year time bar of Iowa Code section 822.3. We find no error in the court's dismissal of the PCR application.

**AFFIRMED.**

---

[2] In *Goodwin*, our supreme court explained:

> A proper motion to challenge an illegal sentence "includes claims that the court lacked the power to impose the sentence . . . , including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional." For example, in *State v. Lathrop*, we held that the defendant properly brought a motion to correct an illegal sentence to challenge his sentence to lifetime parole as unconstitutional under the ex post facto clause of the Iowa Constitution.
>
> Regarding sentences for juvenile offenders, "we have held it is the 'absence of a sentencing procedure' that offends article I, section 17 of the Iowa Constitution. Thus, when there is an appropriate sentencing procedure there is no constitutional violation." Goodwin would have a proper motion to correct an illegal sentence if he had been denied an individualized sentencing hearing. But "if the district court follows the sentencing procedure we have identified and a statute authorizes the sentence ultimately imposed, then our review is for abuse of discretion; we ask whether there is 'evidence [that] supports the sentence.'"
>
> We hold that the district court had the constitutional authority to impose Goodwin's twenty-year mandatory minimum sentence because it conducted an individualized sentencing hearing that applied the *Miller/Lyle/Roby* factors. The Iowa Constitution permits mandatory minimum sentences for juvenile offenders after an individualized hearing applying those factors.

936 N.W.2d at 644–45 (footnote and citations omitted.)